IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MONTANA BARRONETTE,** | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | **CRIMINAL NO. GLR-16-597** |
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Respondent. | | |

******

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S § 2255 PETITION (ECF 826)

### INTRODUCTION

Defendant Montana Barronette was the leader of a murderous street gang that called itself "Trained To Go" or "TTG." Operating in and around the Sandtown neighborhood of west Baltimore, TTG trafficked in drugs and death. Specifically, the organization distributed heroin, cocaine, marijuana, and other controlled substances. TTG members also engaged in acts of violence, including murder, kidnapping, and assault, to protect and expand their territory and to prevent individuals from cooperating with law enforcement. TTG's reputation for violence was so pronounced that other violent street gangs contracted with TTG to conduct their murder-for-hire schemes. Montana Barronette was the leader and organizer of TTG.

Following a 25-day trial, a federal jury found Barronette responsible for conspiring to murder eight people in furtherance of racketeering activities. ECF 491 at 1-2. The jury also found Barronette was responsible for distributing kilograms of heroin. *Id.* at 10. The jury specifically found Barronette guilty of racketeering conspiracy and drug trafficking conspiracy offenses. *Id.* Barronette was sentenced to two concurrent life sentences. ECF 542. The Fourth

Circuit affirmed his convictions and sentence. *United States v. Barronette*, 46 F.4th 177 (4th Cir. 2022).

Now, the defendant has filed a habeas petition, raising two claims of ineffective assistance of counsel. ECF 826. First, he claims ineffective assistance by his counsel's alleged invited error in eliciting a single response from a single witness (Anthony Boyd) during cross-examination which the Court asked the jury to disregard. Second, he claims ineffective assistance in plea negotiations.

Both of these claims fail.

First, with regard to his cross-examination claim, Barronette fails to recognize that a defense attorney's choice on how and when to cross-examine a witness is the prototypical kind of tactical litigation decisionmaking that will not be second-guessed on collateral review. *United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001). And in any event, his counsel ably cross-examined Boyd and his performance cannot be cancelled by a single response from the witness which the Court asked the jury to disregard. Barronette is entitled to reasonably competent counsel, not perfect counsel with the benefit of perfect hindsight. As such, because there was no constitutionally deficient performance here, this claim must be rejected. *Tong Xiong v. Felker*, 681 F.3d 1067, 1079 (9th Cir. 2012) (defendant failed to meet *Strickland* performance prong by alleged errant question on cross-examination). Nor can Barronette demonstrate any prejudice by this single comment uttered by Boyd on cross-examination. The jury was asked to disregard it. And in any event, the evidence of Barronette's guilt was overwhelming. As such, he cannot meet *Strickland*'s second prong either. *United States v. Washington*, 869 F.3d 193, 207-08 (3rd Cir. 2017) (finding no prejudice where defense cross-examination elicited testimony about defendant's prior convictions because evidence was

2

otherwise overwhelming); *United States v. Gooch*, 842 F.3d 1274, 1279 (D.C. Cir. 2016) (finding no prejudice even after defense counsel asked an "improvident" question on cross-examination).  It should also be noted that Barronette raised this very same issue on direct appeal, and the Fourth Circuit held that Barronette was "not prejudiced" by Boyd's comment. *See* 46 F.4th at 202.  Barronette cannot use collateral review to re-litigate issues he previously lost on direct appeal.  *United States v. Michaud*, 925 F.2d 37, 41 (1st Cir. 1991) ("[I]ssues decided on direct appeal may not be relitigated under a different label on collateral review.").

Second, while Barronette claims his counsel was ineffective for the advice given about a potential plea to 50 years in prison, these claims fail as well.  Even taking the defendant's own recitation of facts at face value, his counsel provided him with valuable advice, helping him recognize that a 50-year sentence could be tantamount to, or close to, a life sentence in prison. While Barronette wants a do-over for his own decisionmaking with perfect hindsight knowing now that he was not successful at trial and received two life sentences, that is not what *Strickland* permits.  His counsel satisfied his basic obligations under *Lafler v. Cooper*, 132 S. Ct. 1376 (2012).  The Sixth Amendment required no more.  And in any event, Barronette fails to establish any prejudice because he cannot credibly maintain that, prior to trial, he would have taken a plea offer to 50 years in prison.  Rather, he decided to proceed to trial, and he cannot get a mulligan on that decision now under the auspices of collateral review.

For these reasons, the defendant's claims are meritless and his habeas petition should be denied.

## STATEMENT OF FACTS

On December 14, 2016, Barronette was named as a defendant in an indictment along with four other members of the gang that called itself "Trained To Go" or "TTG."  ECF 1.  In June

2018, Barronette was charged in a superseding indictment with: (1) RICO conspiracy, in violation of 18 U.S.C. § 1962(d); and (2) drug trafficking conspiracy, in violation of 21 U.S.C. § 846.  ECF 296.

The matter proceeded to trial starting on September 17, 2018.  ECF 391.[1]  At trial, the government presented evidence that TTG members conspired to sell drugs, and also engaged in numerous acts of violence.  *United States v. Barronette*, 46 F.4th 177, 187 (4th Cir. 2022). Specifically, TTG "distributed heroin, cocaine, marijuana, and other controlled substances. In addition to distributing drugs, the organization's members . . . engaged in violent acts using firearms, including murder, kidnapping, and assault. Other criminal organizations, including a group known as 'Young Go Getters' (YGG) solicited TTG members and associates to engage in murder-for-hire schemes." *Id.*

As the Fourth Circuit noted, Barronette was one of the leaders of the gang along with Terrance Sivells.  *Id.*  The evidence presented at trial showed that "Barronette was engaged in heroin trafficking in the area of North Carrollton Street and Riggs Avenue in Baltimore." *Id.* at 195.  Additionally, law enforcement was able to make controlled purchases of heroin from Barronette.  *Id.*  Additionally, law enforcement obtained wiretaps on phones associated with TTG, and intercepted calls between Barronette and Sivells in which they were discussing guns and drugs.  *Id.*

A jury convicted Barronette on all counts.  ECF 491.  The jury specifically found that Barronette conspired to commit the murders of (1) Brian Chase, (2) Marquez Jones, (3) Lamont Randall, (4) Gerald Thompson, (5) Jacqueline Parker, (6) Antonio Addison, and (7) an unknown

---

[1] Prior to trial, Barronette was offered a plea agreement to 50 years in prison; however, as detailed more fully below, he rejected the plea and elected to proceed to trial.  *See* ECF 826 at 21.

4

individual.  ECF 491.  However, the jury declined to find that Barronette conspired to commit one murder—that of David Moore.  *Id.*  Additionally, the jury found that more than one kilogram of heroin was reasonably foreseeable to in furtherance of the conspiracy.  *Id.*

Barronette filed a direct appeal.  *See* 46 F.4th at 177.  On appeal, Barronette raised the following issues: (1) whether the RICO conspiracy statute is unconstitutionally vague; (2) whether the right to a public trial was violated; (3) whether sufficient evidence supported the jury's drug weight findings; and (4) whether the court erred in not declaring a mistrial because of statements made by Anthony Boyd on cross-examination.  *Barronette*, 46 F.4th at 190.  The Fourth Circuit affirmed all of Barronette's convictions.  *Id.* at 201-05.

After fully exhausting his appellate rights, the defendant now files this habeas petition, claiming ineffective assistance of counsel.  ECF 826.  However, as detailed below, his claims are meritless.  As such, Barronette's petition must be denied.

## ARGUMENT

"The Sixth Amendment entitles criminal defendants to the 'effective assistance of counsel'—that is, representation that does not fall 'below an objective standard of reasonableness' in light of 'prevailing professional norms.'"  *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (per curiam) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984)).

In order to establish ineffective assistance, a defendant bears the burden to demonstrate: "(1) that his attorney's performance fell below an objective standard of reasonableness and (2) that he experienced prejudice as a result, meaning that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013) (citing *Strickland*) (internal quotations omitted).

In undertaking this inquiry, "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.  Courts must apply "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Galloway*, 749 F.3d 238, 241 (4th Cir. 2014) (quoting *Strickland*, 466 U.S. at 689).  The Supreme Court has recognized that "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citation omitted).  The Fourth Circuit has held that "[t]he *Strickland* standard is difficult to satisfy, in that the 'Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.'" *United States v. Basham*, 789 F.3d 358, 371 (4th Cir. 2015) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)).

Here, the defendant makes two claims of ineffective assistance of counsel.  First, he takes issue with his counsel's cross-examination of Anthony Boyd, a jailhouse informant.  Second, he claims he received ineffective advice in rejecting a 50-year plea offer and instead proceeding to trial which, in hindsight, he now rues given that he received two concurrent life sentences.  As detailed below, each fails under both prongs of *Strickland*.

        1.     **Counsel Provided Effective Representation On Cross-Examination**

Barronette's first claim of ineffective assistance concerns his counsel's cross-examination of Anthony Boyd.  Boyd was a jailhouse informant who was housed next to both Barronette and Dennis Pulley and testified about how they discussed with him some of their killings.  Specifically, Pulley told him about how Barronette hired Pulley to commit a murder for $10,000.  Exhibit 1 at 5.  He further relayed how Barronette told Pulley he should get an extra $1,000 for every extra "head shot" he discharged into the dead victim.  *Id.* at 10.  Boyd also recounted how Barronette bragged about killing of Antonio Addison in front of his grandmother's house.  *Id.*

6

Defense counsel then began cross-examining Mr. Boyd.  Specifically, defense counsel established that Boyd had prior convictions related to firearms.  *Id.* at 12.  He also elicited that Boyd was implicated in sex trafficking.  *Id.* at 13.  He also elicited that Boyd had tried to obstruct justice by getting people to lie about their possession of guns that were actually his.  *Id.* at 15.  Further, he elicited Boyd's potential bias/motivation by the fact that he hoped for a sentence reduction in exchange for his testimony for the government.  *Id.* at 19.   He also tried to develop inconsistencies in the timeline of events as Boyd described them.  *Id.* at 20.  Then, defense counsel attempted to paint Boyd someone who was making up statements because he had seen Barronette's name on the news and he was tailoring his testimony accordingly.  *Id.* at 28.  In the context of that line of questioning, the following exchange occurred:  "Q: All right.  You heard about his case in the news?  A:  He was put on the news and called the number one gun puller in Baltimore.  That's all I say."  *Id.* at 29.  Counsel immediately objected and asked to approach the bench at which time he moved for a mistrial.  *Id*.  After a bench conference, the court denied the defense motion for a mistrial and instructed the jury as follows:  "Ladies and gentleman of the jury, please ignore both the last statement by Mr. Lawlor, and the last question and answer to Mr. Boyd."  *Id.* at 30-31.  Further, as detailed above, Barronette raised this issue on direct appeal, and the Fourth Circuit affirmed and found that, "Barronette was not prejudiced" by the comment considering the court's limiting instruction.  46 F.4th at 202.

      This claim of ineffective assistance fails for a number of reasons.

      First, this claim must be rejected because it was already raised on direct appeal by Barronette and the Fourth Circuit decided it adversely to him.  It is axiomatics that a defendant cannot re-litigate issues decided on direct appeal by dressing them up in the guise of ineffective assistance of counsel and raising them on habeas review.  *United States v. DeRewal*, 10 F.3d

7

100, 105 n.4 (3d Cir. 1993) (a habeas motion is not the appropriate forum to re-litigate issues previously addressed on direct appeal); *United States v. Michaud*, 925 F.2d 37, 41 (1st Cir. 1991) ("[I]ssues decided on direct appeal may not be relitigated under a different label on collateral review."); *United States v. Johnson*, 105 F.3d 670 (table), No. 96-6190, 1997 WL 2658, at *1 (10th Cir. Jan. 2, 1997) ("We cannot again review this claim simply because it has been recast in the clothing of an ineffective assistance of counsel claim."); *Foster v. United States*, 2024 U.S. Dist. LEXIS 65874 (W.D.N.C. Apr. 9, 2024) (rejecting claim on habeas that was previously raised on direct appeal because "Petitioner may not now take a second bite at the apple by presenting the same claim under the guise of ineffective assistance of counsel."). Here, the issue of the Boyd testimony was raised on direct appeal, and the Fourth Circuit determined there was no prejudice. This should end the matter here and prevent Barronette from re-raising this claim now in the guise of ineffective assistance.

Second, even taking the claim at face value, it still fails on the performance prong. Courts have long-recognized that "cross-examination techniques, like other matters of trial strategy, [are generally left] to the professional discretion of counsel." *United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001); *accord United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). In conducting cross-examination, defense counsel often have to take "calculated risks" to seek to score points before the jury. *Tong Xiong v. Felker*, 681 F.3d 1067, 1079 (9th Cir. 2012). However, when a calculated risk might not pay off, that does not mean a defense counsel must be labelled unconstitutionally ineffective. Rather, "[u]nder *Strickland*, this is not enough to demonstrate the requisite incompetence, nor prejudice, to trigger" habeas relief. *Id.*; *see also Oliver v. Johnson*, 766 Fed. Appx. 828, 833 (11th Cir. 2019) ("While counsel's cross-examination ultimately misfired, 'a defendant is not guaranteed errorless counsel.'")

(citation omitted); *Flieger v. Delo*, 16 F.3d 878, 887 (8th Cir. 1994) (holding cross-examination that elicited testimony of defendant's violent character and reputation was reasonable trial strategy where the counsel's aim was to seek to discredit the government's witness).

Here, Barronette cannot show any deficient performance by his counsel in the cross-examination of Boyd. As an initial matter, the cross must be viewed as a whole and not in isolation. And in the main, defense counsel performed ably. He established Boyd's past criminal history, his prior obstruction of justice, and his motive to lie here to score a sentence reduction. And then counsel tried to further demonstrate Boyd was making up his testimony by asking him about whether he was familiar with Barronette from the news. That was a perfectly acceptable strategy. And while it ultimately did not yield the hoped-for fruit, and instead the witness discussed how he had seen Barronette was labelled in the news as a "trigger-puller," that does not mean defense counsel's performance was unconstitutionally poor. Rather, viewed as a whole, the cross was quite effective. Indeed, to countenance this argument would be to require defense counsel to be error-free in their cross-examinations on pain of being labelled ineffective. *Strickland* surely stands for more than that. In fact, to meet Strickland's high bar, the defendant must show that it was as if he had no counsel at all. The record here comes nowhere close to that mark. Barronette had an able, effective, and zealous advocate and thus he cannot satisfy the first *Strickland* prong.

Nor can Barronette meet his burden to show prejudice either. As detailed above, on the whole, his counsel did an able job of eliciting impeaching information from Boyd. And while he did get an answer that he was not expecting from the witness, defense counsel was able to object and the court issued a curative instruction. Courts have rightly recognized that the issuance of a curative instruction usually cures any possible prejudice under *Strickland*. *See Shaieb v.*

9

*Burghuis*, 499 Fed. Appx. 486, 504 (6th Cir. 2012); *United States v. Campbell*, 480 Fed. Appx. 610, 614 (2d Cir. 2012); *Orbe v. True*, 233 F. Supp. 2d 749, 782 (E.D. Va. 2002).[2] Moreover, in light of the overwhelming evidence against Barronette, it cannot be that this isolated "trigger-puller" comment had any material effect on the jury. Indeed, Boyd's other testimony properly reiterated how Pulley told him about Barronette's payment of $10,000 to him for killing and how Barronette said he would pay an extra $1,000 for every additional head shot. Additionally, Boyd testified about how Barronette thought it was "funny" that they killed Antonio Addison on the steps of his grandmother's porch. There is no objection made to that testimony. Nor could there be. But that testimony was surely damning. As was the evidence about the controlled buys of heroin from Barronette. And the wiretap calls. In short, given all the evidence adduced during this 25-day trial, Barronette simply cannot claim that a single comment made by a single witness which was the subject of a curative instruction somehow amounted to the kind of prejudice required to meet Strickland's high bar. As such, this claim fails for this reason as well. *United States v. Washington*, 869 F.3d 193, 207-08 (3rd Cir. 2017) (finding no prejudice where defense cross-examination elicited testimony about defendant's prior convictions because evidence was otherwise overwhelming); *United States v. Gooch*, 842 F.3d 1274, 1279 (D.C. Cir. 2016) (finding no prejudice even after defense counsel asked an "improvident" question on cross-examination).

---

[2] Contrary to Barronette's claim in his brief, ECF 826 at 19, there was no need to "voire dire" the jury after the curative instruction was given. Juries are presumed to follow the Court's instructions. And here, the jury clearly did so, as the Fourth Circuit found. *See* 46 F.4th at 202 (holding that "the jury was able to make individual guilt determinations for Barronette here" notwithstanding the Boyd testimony).

### 2. Counsel Provided Effective Representation In Plea Negotiations

Barronette's second claim concerns the advice he received in contemplating whether to accept a plea agreement in which the parties would have agreed on a sentence of 50 years in prison. Specifically, Barronette complains that "counsel only relayed the offer" and told him that "a sentence of 50-years, and a possible life sentence if convicted at trial, were no different, and that with a 50-year sentence he could expect to 'die in jail.' Counsel also told Barronette that if he accepted the plea he would be nearly 80-years old when released, with little chance of a good quality of life." ECF 826 at 21.[3] Barronette decries this as ineffective. He is wrong on several fronts.

The Supreme Court addressed the standard for showing ineffective assistance during the plea bargaining stage in *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), and *Missouri v. Frye*, 132 S. Ct. 1399 (2012). In *Lafler*, the Court held that the Sixth Amendment right to counsel applies to the plea bargaining process and prejudice occurs when, absent deficient advice, the defendant would have accepted a plea that would have been accepted by the court, and that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." 132 S. Ct. at 1385. In *Frye*, the Supreme Court held that a component of the Sixth Amendment right to counsel in the plea bargaining context is that counsel has a duty to communicate any offers from the Government to his client. 132 S. Ct. at 1408.

Here, the record is clear that defense counsel met his obligations under *Frye* and *Lafler* and hence Barronette cannot meet his burden on the first *Strickland* prong. As the defendant admits, counsel relayed the deal to him and told him to let counsel know if he wanted to explore

---

[3] References to Barronette's petition are to the page numbers in the ECF PDF and not necessarily the page numbers at the bottom of the pages of his filing.

it further. Nothing more was required under *Lafler/Frye*. Moreover, while Barronette fault his lawyer for telling him that 50 years was essentially a life equivalent sentence, that is in fact patently true advice. Barronette was approximately 24 years old when he was sentenced. *See* 528 (Barronette PSR). A 50-year sentence would have put him at approximately 70 years old when he was released. It was actually very good advice to point out that there was not much difference between a life sentence and a sentence in which the defendant would be incarcerated until he was in his 70s. In that instance, it might be a rational choice to take a chance and proceed to trial. In this way, Barronette's admission that his counsel left the choice to him demonstrates his counsel's advice was perfectly reasonable. And it was certainly well within the wide discretion afforded by *Strickland*. Hence, the defendant cannot fault his attorney's performance here. *See Hanger v. Clarke*, 2023 U.S. Dist. LEXIS 33045 (E.D. Va. 2023) (holding that advice about plea offer was sound and not ineffective).

      Nor can Barronette make the requisite showing of prejudice. While he is claiming he would have accepted a 50-year deal now, he is doing so with the benefit of hindsight. Barronette knows now that he received two concurrent life sentences. Of course a 50-year plea deal looks more attractive at this juncture. Problematically for Barronette, however, we must "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1965-1969 (2017). And here, Barronette presents no evidence from the pretrial period (i.e. before September 2018) of his intention to plead but for counsel's advice. This should end the matter because it demonstrates he cannot establish any prejudice under *Strickland*. As such, his plea agreement-related claims fail on the second *Strickland* prong as well. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (no prejudice shown where defendant failed to prove that but for counsel's errors he would not have pled).

\* \* \*

The Supreme Court set a high bar for ineffective assistance claims. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. The defendant has failed to come anywhere close to that standard here. His trial counsel provided him representation that was able and zealous. The defense attorney's performance was certainly within the wide berth afforded by *Strickland* and well above the required constitutional minimum established by the Sixth Amendment. This was a properly adversarial process. And there is no basis to claim any different outcome could have been rendered had the defendant had different counsel; the evidence of guilt here was too overwhelming in all respects. Because the defendant has not and cannot meet any of *Strickland*'s prongs, his claims must be denied.

## CONCLUSION

Based on the foregoing, the Government respectfully requests that the Court deny the Petitioner's motion to vacate. And because the claims fail as a matter of law, the Court should deny an evidentiary hearing.

                                        Respectfully submitted,

                                        Erek L. Barron
                                        United States Attorney

                        By:____/s/_____
                                        Jason D. Medinger (Bar No. 28470)
                                        Assistant United States Attorney
                                        36 South Charles Street
                                        Fourth Floor
                                        Baltimore, Maryland 21201
                                        (410) 209-4800

## CERTIFICATE OF SERVICE

I hereby certify that the following was filed with the Court via CM/ECF, and that a hard copy was served on the defendant by U.S. Mail addressed as follows:

Montana Barronette
Reg. No. 62786-037
USP Atwater
1 FEDERAL WAY
ATWATER, CA  95301

                                            By:____/s/_____
                                                  Jason D. Medinger (Bar No. 28470)
                                                  Assistant United States Attorney
                                                  36 South Charles Street
                                                  Fourth Floor
                                                  Baltimore, Maryland 21201
                                                  (410) 209-4800